# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2440
_____

United States of America

*Plaintiff - Appellee*

v.

Yuri Chachanko

*Defendant - Appellant*
_____

Appeal from United States District Court
for the District of South Dakota - Western
_____

Submitted: May 16, 2025
Filed: December 17, 2025
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

Definite articles like "the" can make a difference. For Yuri Chachanko, it means he is not yet eligible for a sentence reduction. The word "the" in the phrase "the term of imprisonment" required him to serve at least 10 years of the sentence

he wanted the district court[1] to reduce.  *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13(b)(6).  Given that he has not done so, we affirm the judgment denying his request.

## I.

Twenty-one years ago, Chachanko and an accomplice went on a crime spree across the Great Plains.  It started with an armed robbery of a casino in Rapid City, South Dakota, followed by four more in Sioux Falls and Watertown.  Next came two crimes in Montana, both stickups at bars.  By then, officers were hot on their trail.  After a high-speed car chase and a brief foot pursuit, their crime spree came to an end.

Chachanko faced federal charges in both states.  In reverse order of the crimes he committed, the Montana prosecution came first, which resulted in a 219-month prison sentence for two Hobbs Act crimes, *see* 18 U.S.C. §§ 2, 1951, and use of a firearm during a crime of violence, *see id.* § 924(c)(1)(A).

More prison time, however, was on its way.  Once the District of Montana finished with him, he had to face prosecution in South Dakota.  He pleaded guilty to using a firearm during another crime of violence.  *See id.* §§ 2, 924(c)(1).  But this time, he received an even longer sentence, 300 months, set to start after he finished serving the Montana one.  *See id.* § 924(c)(1)(C)(i) (2006) (imposing a 25-year mandatory-minimum sentence for any "second or subsequent conviction" of the crime); *id.* § 924(c)(1)(D)(ii) (requiring a consecutive sentence).

Fast forward to the present.  Due to legislative changes in the First Step Act, Chachanko requested a sentence reduction in the South Dakota case.  *See* Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018) (amending 18 U.S.C. § 3582);

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota.

U.S.S.G. § 1B1.13. As relevant here, he thought he deserved one because his 300-month sentence was "unusually long," U.S.S.G. § 1B1.13(b)(6), and he had a head injury, depression, and bipolar disorder, *see id.* § 1B1.13(b)(1)(B)–(C). Instead of making an immediate decision, the district court ordered briefing on whether he had served "at least 10 years of the term of imprisonment." *Id.* § 1B1.13(b)(6) (requiring it for "unusually long sentence[s]"). When it concluded he had not and that "routine . . . monitoring" would take care of his medical conditions, it denied the motion.

## II.

Before 2018, only the Bureau of Prisons could seek a sentence reduction on a prisoner's behalf in these circumstances. *See* 18 U.S.C. § 3582(c)(1)(A) (2017) (providing that it was by "motion of the Director of the Bureau of Prisons"); *United States v. Rodd*, 966 F.3d 740, 746 n.6 (8th Cir. 2020). Now, thanks to the First Step Act, prisoners can request them on their own, once they have "fully exhausted" their administrative remedies. 18 U.S.C. § 3582(c)(1)(A) (2018); *see Rodd*, 966 F.3d at 744–45 (describing how the First Step Act changed the procedures). Any relief, however, is still at the discretion of the district court, which "*may* reduce the" sentence. 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *see Rodd*, 966 F.3d at 747–48.

A prisoner seeking a sentence reduction must get past the eligibility requirements: "extraordinary and compelling reasons warrant[ing]" a reduction and "consisten[cy] with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). What qualifies as an "extraordinary and compelling reason" is up to the Sentencing Commission, although its policy statements must be "consistent with all pertinent provisions of any Federal statute." 28 U.S.C. § 994(a)(2)(C), (t). For those who are eligible, a court may then exercise its discretion by considering the "factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

With this framework in mind, Chachanko argues that the district court made three errors when it denied a sentence reduction. First, it did not add his Montana and South Dakota sentences together in evaluating his eligibility for relief from an "unusually long sentence." U.S.S.G. § 1B1.13(b)(6). Second, it applied the "[e]xtraordinary and compelling reasons" requirement too strictly when it found that his medical conditions were not serious enough to count. *Id.* § 1B1.13(b)(1). And finally, it never addressed whether they qualified under a catch-all provision. *See id.* § 1B1.13(b)(5) (accepting "any . . . circumstance or combination of circumstances . . . similar in gravity" to a listed reason, other than an "unusually long sentence").

## A.

Chachanko's months-long crime spree resulted in two federal sentences, one in Montana and the other in South Dakota. Although he singles out the South Dakota sentence as "unusually long," he wants us to treat the two sentences as one in calculating whether he has "served at least 10 years of *the* term of imprisonment." *Id.* § 1B1.13(b)(6) (emphasis added). Only then would he be eligible for a sentence reduction. *See id.*; *see also United States v. Gamble*, 572 F.3d 472, 474–75 (8th Cir. 2009).

The district court explained why. Although Chachanko had served 17 years in prison by the time he filed his motion, the sentences were consecutive and he had only just started serving his South Dakota sentence, which is the one he wanted reduced. If he were serving them in reverse order, South Dakota then Montana, the court suggested it might have granted the motion. But with each term of imprisonment treated separately, rather than in the "aggregate," he had yet to become eligible because he had not "served at least 10 years" of the *South Dakota* sentence.

U.S.S.G. § 1B1.13(b)(6). The question for us is whether those 17 years *should* have counted.[2]

The answer comes down to what the phrase "the term of imprisonment" means. One interpretation is that it refers to the total time Chachanko will spend in prison. This reading bunches the sentences together, allowing service on one to count toward the other. Another is the meaning the district court gave it, which treats each sentence on its own. Under this interpretation, the time Chachanko spent serving his Montana sentence would not count.

In the absence of a statutory definition, we use the "ordinary tools of statutory interpretation" to understand the phrase's "plain and ordinary meaning." *United States v. Clayborn*, 951 F.3d 937, 939 (8th Cir. 2020) (citations omitted). The most helpful clue is the word "the," which appears in both the statute, 18 U.S.C. § 3582(a), (c)(1)(A), and the relevant Sentencing Guidelines provision, U.S.S.G. § 1B1.13(b)(6). The statute directs "*[t]he* court" to consider certain factors when "determining whether to impose a term of imprisonment" on "the defendant," as well as "the length of *the* term." 18 U.S.C. § 3582(a) (emphases added). It then allows "*the* court," in its discretion, to "reduce *the* term of imprisonment" if "the defendant" meets other criteria. *Id.* § 3582(c)(1)(A) (emphases added). As a word of limitation, "the" refers to a specific object, *see Luiken v. Domino's Pizza, LLC*,

---

[2]The government argued before the district court that U.S.S.G. § 1B1.13(b)(6) was without legal effect because it conflicts with both the statute, *see* 18 U.S.C. § 3582(c)(1)(A)(i), and our precedent, *see, e.g.*, *United States v. Rodriguez-Mendez*, 65 F.4th 1000, 1001 (8th Cir. 2023); *United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022) (holding that disparities with future sentences due to non-retroactive changes in the law cannot be "extraordinary and compelling reasons"). *See Rutherford v. United States*, No. 24-820, 2025 WL 1603603 (U.S. June 6, 2025) (granting certiorari to resolve the question presented in *Crandall*). It has dropped this argument on appeal, however, so we will not consider it. *See United States v. Greene*, 513 F.3d 904, 906–07 (8th Cir. 2008) (treating the failure to brief an argument as waiver).

705 F.3d 370, 373 (8th Cir. 2013), usually one the text has already introduced, *see 3M Co. v. Comm'r*, 154 F.4th 574, 580 (8th Cir. 2025).

Let's walk through what the repeated use of the word "the" means for this case. "The court" originally imposed "a term" of 25 years on Chachanko, who was "the defendant." 18 U.S.C. § 3582(a). Upon the filing of a motion for a sentence reduction, "*the* court . . . may reduce *the* term of imprisonment," a clear reference to the same court and the initial 25-year term it imposed. *Id.* § 3582(c)(1)(A) (emphases added); *see 3M*, 154 F.4th at 580; *cf. United States v. Long*, 997 F.3d 342, 348 (D.C. Cir. 2021) ("A[] . . . motion for compassionate release is generally filed with the judge that imposed the original sentence.").

If the statute tells us that the South Dakota court can only reduce the South Dakota sentence, then the reference to "the term of imprisonment" in the relevant Sentencing Guidelines provision must be similarly limited. U.S.S.G. § 1B1.13(b)(6); *see id.* § 1B1.13(a) (referencing 18 U.S.C. § 3582(c)(1)(A)); *3M*, 154 F.4th at 580 (explaining that the consistent-usage canon "is particularly strong when a word like 'the' precedes a previously used noun"). That is, "the term of imprisonment" requiring service of "at least 10 years" is the South Dakota sentence—the same one Chachanko seeks to have reduced—and that one only. U.S.S.G. § 1B1.13(b)(6); *see NLRB v. Noel Canning*, 573 U.S. 513, 527 (2014) ("[T]he word 'the' frequently . . . indicates 'a particular thing.'" (citation omitted)). Under that interpretation, Chachanko falls well short of 10 years.

Chachanko would rather have us adopt the bunching-the-sentences interpretation. For support, he points to a nearby statute that treats "[m]ultiple terms of imprisonment ordered to run consecutively . . . as a single, aggregate term of imprisonment" for "*administrative purposes*." 18 U.S.C. § 3584(c) (emphasis added). Treating them as a single sentence would mean he has served 17 years already, substantially more than the 10 years needed for eligibility. *See* U.S.S.G. § 1B1.13(b)(6).

Chachanko's interpretation is both counter-textual and contrary to precedent. In *Gamble*, we rejected the idea that a district court can "meld . . . two sentences into a single, aggregate term of imprisonment." 572 F.3d at 474–75. There, the defendant had already fully served the crack-cocaine sentence he wanted reduced. *See id.* at 473. He filed a motion anyway based on the theory that Chachanko now urges us to adopt: his two sentences become "joined as one" under 18 U.S.C. § 3584(c), so he should be eligible for a reduction under 18 U.S.C. § 3582. *Id.* at 474. In coming out the other way, we explained that only the Bureau of Prisons had to treat sentences "as a single, aggregate term of imprisonment" because it, not courts, "administers" them. *Id.*; *see Black's Law Dictionary* 42 (5th ed. 1979) ("In this sense, administrative functions or acts are distinguished from such as are judicial.").

With the same underlying theory supporting Chachanko's argument, it is no surprise that his motion runs into the same problem, even if it presents a slightly different scenario. Although Gamble was hoping to reduce a sentence he had already served and Chachanko one he had just started, both defendants tried to rely on the same administrative statute to have two sentences "joined as one." *Gamble*, 572 F.3d at 474. Regardless of how the Bureau of Prisons might treat each of these scenarios for administrative purposes, *see* 18 U.S.C. § 3584(c), neither was eligible for a reduction.

## B.

The district court also did not abuse its discretion in denying a reduction based on Chachanko's medical conditions. *See* U.S.S.G. § 1B1.13(b)(1); *Rodd*, 966 F.3d at 747–48. Although he continues to suffer ongoing complications from a head injury, in addition to facing mental-health challenges, he voluntarily declined treatments for both. And, according to the Bureau of Prisons, his condition is "stable" and medical needs are "limited." In short, nothing suggests his health "substantially diminishes [his] ability . . . to provide self-care" or "is at risk of serious deterioration." U.S.S.G. § 1B1.13(b)(1)(B)–(C).

The same goes for the argument that his medical conditions made him eligible for a reduction under the catch-all provision covering "any other circumstance or combination of circumstances." *Id.* § 1B1.13(b)(5). The district court considered his arguments "holistically" and in "combination," but nothing rose to the level of justifying relief. *Id.* (requiring a "similar[ity] in gravity" to the other listed reasons). It did not abuse its discretion in coming to that conclusion. *See Rodd*, 966 F.3d at 747–48.

III.

We accordingly affirm the judgment of the district court.

_____
